UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| THOMAS DiLORENZO | : | |
| --- | --- | --- |
| | : | |
| v. | : | C.A. No. 14-214ML |
| | : | |
| CAROLYN COLVIN | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on April 30, 2014 seeking to reverse the decision of the Commissioner. On December 15, 2014, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 9). On February 17, 2015, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 13). Plaintiff filed a Reply Brief on March 30, 2015. (Document No. 15).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 24, 2011 alleging disability since September 1, 2005.[1] (Tr. 176-184). The application was denied initially on October 3, 2011 (Tr. 116-118) and on reconsideration on December 21, 2011. (Tr. 122-124). Plaintiff requested an Administrative hearing. On January 2, 2013, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel and a vocational expert ("VE") appeared and testified. (Tr. 39-75). The ALJ issued an unfavorable decision to Plaintiff on January 31, 2013. (Tr. 17-32). The Appeals Council denied Plaintiff's Request for Review on February 25, 2014, therefore the ALJ's decision became final. (Tr. 1-3). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by failing to give adequate weight to the opinions of Dr. Jacobs, a treating psychiatrist, and Dr. Parsons, a consulting psychologist retained by his attorney.

The Commissioner disputes Plaintiff's claims and asserts that substantial evidence supports the weights given by the ALJ to the opinions of Dr. Jacobs and Dr. Parsons.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

---

[1] The ALJ reopened Plaintiff's prior application which was filed on December 21, 2009. (Tr. 168-175). That claim was denied on July 17, 2010 at the initial level. (Tr. 108-110). Plaintiff subsequently filed another application on May 24, 2011. Since the initial denial of the first application and the filing of the second claim occurred within twelve months, the ALJ elected to reopen the prior application.

-2-

as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42

U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.   APPLICATION AND ANALYSIS

Plaintiff was thirty-five years old on the date of the ALJ's decision. He has "spent a considerable portion of his adult life incarcerated for violent crimes." (Tr. 369). Plaintiff has a seventh grade education (Tr. 49) with a history of special education. Plaintiff worked in the past as a camp counselor, house cleaner, furniture refinisher, landscaper and security guard. (Tr. 216-217, 222). Plaintiff alleges disability due to high blood pressure, severe anxiety, depression, heart palpitations, Hepatitis C and brain seizures. (Tr. 215). Plaintiff reported that he stopped working on January 1, 1999 because he went to jail, but that his impairments became severe enough to keep him from working as of September 1, 2005. Id. He was released from prison in 2009. (Tr. 50).

Plaintiff exhibited anxiety symptoms while in prison. He was anxious and had fearful thoughts, poor concentration, panic attacks, and indecisiveness. (Tr. 288-291, 322-330). His diagnosis was panic disorder and his Global Assessment of Functioning ("GAF") score was 50 (Tr. 290) indicating serious symptoms and/or a serious impairment in functioning.

Following Plaintiff's release from prison, he began treatment at Comprehensive Community Action Program ("CCAP") where he was found to have normal mental status and cognitive examinations, as well as normal blood pressure. (Tr. 363-368). In December 2009, Plaintiff stated that his panic attacks were subsiding, and that he was looking for work. (Tr. 363). Physical and mental examinations were unremarkable at that time. (Tr. 363-364).

In March 2010, John Parsons, Ph.D. evaluated Plaintiff at his attorney's request. (Tr. 369-378). Testing revealed a full-scale IQ of 72, indicating borderline range of intellectual functioning. (Tr. 372). Mental status examination showed Plaintiff to be moderately to severely distressed and apprehensive, with poor eye contact, normal speech, thoughts of worthlessness, anxious and depressed mood, flat affect, and impaired attention and concentration, but alert and oriented, with memory functions consistent with his intellectual ability. (Tr. 373-374). Dr. Parsons diagnosed Plaintiff with panic disorder with agoraphobia; major depressive disorder, recurrent, moderate to severe; borderline intellectual functioning; and antisocial personality disorder. (Tr. 375). He assessed a GAF of 45. Id. Dr. Parsons opined that Plaintiff had cognitive limitations and problems with short-term memory, which would negatively impact his ability to consistently understand and remember instructions. (Tr. 376). He further opined that Plaintiff had moderately severe to severe limitations in his ability to perform various work-related activities. (Tr. 377-378).

In April 2010, State agency physician Dr. Leslie Caraceni, M.D. reviewed the evidence of record and opined that Plaintiff's hypertension and hepatitis C were non-severe impairments. (Tr. 379). She also found no medical support for a heart condition. Id.

Plaintiff began counseling with Christine Chester, LICSW in June 2010. Ms. Chester diagnosed Plaintiff with generalized anxiety disorder and noted that he was doing well on his

medications, but frustrated by his continued denials of SSI benefits. (Tr. 403-417). Ms. Chester assessed a GAF of 50-60 indicating moderate to serious symptoms and/or moderate to serious difficulty in functioning. (Tr. 410).

In July 2010, state agency psychologist MaryAnn A. Paxson, Ph.D. reviewed the evidence of record and opined that Plaintiff was able to understand, remember, and carry out one- to three-step, familiar, repetitive tasks for two-hour periods throughout an eight-hour workday; could accept usual instruction and supervision, but would work best independently rather than in team tasks; and could maintain socially appropriate appearance and behavior. (Tr. 387).

The CCAP records dated September 2010 through August 2011 show that Plaintiff was doing well from a mental health standpoint. (Tr. 540-559). He was taking medication and continued with counseling. Id. Treating physician Camille Montes, M.D., noted that Plaintiff was occasionally anxious, but was stable. Plaintiff reported that he was caring for his three-month old daughter and that he felt good with a stable mood. (Tr. 546).

In April 2011, Ms. Chester indicated that Plaintiff had gained insight into his anxiety following his release from prison and that his condition had improved. (Tr. 606). She assessed a GAF of 60 indicating moderate symptoms. (Tr. 605). She indicated that Plaintiff was discharged with improved condition after not contacting the Center for thirty days. (Tr. 606).

In September 2011, Ghulam Surti, M.D. evaluated Plaintiff during a consultative psychiatric examination. (Tr. 559-562). Plaintiff reported that he tried to help his mother out as much as he could at home, and that he drove occasionally. (Tr. 560). He had limited socialization and limited friends but had a seven-month old daughter. Id. He said he watched television but had no other hobbies. Id.

Plaintiff was unable to do serial threes and sevens, but his recall was intact. (Tr. 560). He was able to persist at tasks, but they took time. Id. Plaintiff's mental status was normal overall, and Dr. Surti diagnosed him with panic disorder without agoraphobia, depressive disorder, NOS, and opioid dependence in full-sustained remission for eight years. Id.

In December 2011, State agency medical consultant Robert Hirsch, M.D. reviewed the evidence of record and opined that Plaintiff's hypertension, liver disease, and affective disorders were non-severe impairments. (Tr. 97-98). State agency psychological consultant, Jan Jacobson, Ph.D., reviewed the evidence of record and opined that Plaintiff could remember and follow simple instructions and finish simple one-to-three step familiar tasks over the course of a normal workday (eight hours per day, five days per week), but would be too distractible to finish complex tasks. (Tr. 97-103). Dr. Jacobson noted that Plaintiff preferred to work on tasks that did not involve frequent direct interaction with customers or coworkers and could accept supervision. (Tr. 101).

In August 2012, a Mini Mental State Examination was conducted by Gene Jacobs, D.O., in which Plaintiff scored fairly high (twenty-four out of thirty), with notable deficiencies only in recall and copying objects. (Tr. 564). Plaintiff also completed self-inventories regarding depression, anxiety, and cognitive impairment. (Tr. 565-578). From September 2012 through November 2012, Plaintiff treated with Dr. Jacobs and counselor Cynthia Bearse. (Tr. 579-587). Plaintiff reported symptoms of severe anxiety and depression. In October 2012, Plaintiff told Ms. Bearse that he was applying for a job. (Tr. 585-586). Dr. Jacobs' treatment notes do not contain any mental status examination findings, but he diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and social phobia. (Tr. 580-581, 583-584). He assessed Plaintiff's GAF as 45. Id. In a mental RFC assessment completed in December 2012, Dr. Jacobs opined that, based on "testing,"

Plaintiff's impairments were severe and would cause interruptions over the course of the workday and he would be unable to sustain competitive employment on a full-time, ongoing basis. (Tr. 635-637).

### A. The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Steps 2 and 3, the ALJ found that Plaintiff's anxiety, borderline intellectual functioning, panic disorder and personality disorder were "severe" impairments but did not, either singly or in combination, meet or medically equal any of the Listings. (Tr. 23). The ALJ then determined that Plaintiff retained the RFC to perform a full range of work exertionally but limited by significant nonexertional limitations regarding concentration and social interaction. (Tr. 25). Based on this RFC and the VE's opinion, the ALJ found that Plaintiff was capable of performing a range of unskilled jobs including janitor, cleaner and packager and thus he was not disabled as defined in the Social Security Act. (Tr. 31).

### B. Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinions

In assessing Plaintiff's RFC, the ALJ rejected the opinions of Dr. Parsons and Dr. Jacobs and gave "greatest weight" to the opinions expressed by Dr. Surti and Dr. Jacobson. (Tr. 29-30). The ALJ also gave "some weight" to Dr. Paxson's opinions but found Plaintiff to be somewhat <u>more</u> limited than Dr. Paxson opined "as per Dr. Jacobson's assessment." (Tr. 30). (emphasis added). Based on these opinions, the ALJ limited Plaintiff to "simple, routine, repetitive tasks and instructions," only occasional interaction with others, and exposure to only simple, routine changes in work setting and only simple, routine work-related decision-makings. (Tr. 25). Plaintiff contends that the ALJ erred by not giving greater weight to the opinions of Dr. Jacobs and Dr. Parsons that Plaintiff was incapable of sustaining any full-time employment.

First, as to Dr. Parsons' opinion, he was not a treating provider. He completed a one-time evaluation of Plaintiff on March 26, 2010 at his attorney's request. (Tr. 369-378). Based on his evaluation, Dr. Parsons opined that Plaintiff's GAF was 45 (indicating serious symptoms) and that he was "incapable of maintaining gainful employment on a sustained basis." (Tr. 375-376). As to RFC, Dr. Parsons found Plaintiff to be either moderately severely or severely impaired in most areas of functioning except for moderate impairments only in the areas of understanding, carrying out, and remembering instructions, and performing simple tasks. (Tr. 378).

The ALJ thoroughly reviewed and discussed Dr. Parsons' opinion. (Tr. 27, 30). He determined that Dr. Parsons' evaluation and opinions are inconsistent with the overall evidence of record and that Plaintiff's degree of impairment exhibited in that one-time evaluation was an "anomaly" and he had not otherwise presented as so significantly impaired. (Tr. 30). Thus, the ALJ rejected Dr. Parsons' opinions.

Plaintiff contends that the ALJ erred in his conclusion that Dr. Parsons' opinions are inconsistent with the overall record. However, the ALJ's conclusions are directly supported by Dr. Jacobson's opinions. On November 28, 2011, Dr. Jacobson opined that Plaintiff was only moderately impaired and that Dr. Parsons' opinion was "an overestimate of the severity of [Plaintiff's] restrictions/limitations and based only on a snapshot of [Plaintiff's] functioning." (Tr. 102). Also, consistent with the ALJ's finding, Dr. Jacobson noted that Dr. Parsons' opinion "relies heavily on the subjective report of symptoms and limitations provided by [Plaintiffs], and the totality of the evidence does not support the opinion." (compare Tr. 102 with Tr. 30). Thus, there is substantial medical evidence in the record supporting the ALJ's rejection of Dr. Parsons' opinions. It is the ALJ's province to evaluate and choose among conflicting and competing medical opinions

in the record.  See Rivera-Torres v. Sec'y of HHS, 837 F.2d 4, 5 (1st Cir. 1988); see also Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) ("The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also.").

Second, as to Dr. Jacobs' opinions, he was a treating provider.  He saw Plaintiff on three occasions between September and December of 2012. (See Exhs. 18F and 24F).  He administered a mini mental state exam ("MMSE") and other testing on August 9, 2012.  (Tr. 564-578).  On December 11, 2012, Dr. Jacobs completed a mental RFC assessment in which he found Plaintiff to be markedly limited in all functioning areas including the ability to understand and carry out very short and simple instructions. (Tr. 632-634).  Although the RFC form contains a section asking for elaboration and an explanation of the summary conclusions in narrative form, Dr. Jacobs simply wrote "see testing, needs neuropsych testing" and provided no other elaboration or explanation of why Plaintiff was so severely limited.  (Tr. 634).

The ALJ rejected Dr. Jacobs' opinions because he "merely listed [Plaintiff's] complaints in his notes and did not list any objective signs of depression or anxiety" and "seemed to use [Plaintiff's] complaints as the basis for his opinions."  (Tr. 30).  He also accurately observed that the ALJ did not "detail" the results of formal mental status exams and that a suggested neuropsychological test was never performed.  Id.

Because a treating physician is typically able to provide a detailed longitudinal picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record.  20 C.F.R. § 404.1527(c); see also Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass 2002)

(The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship, the frequency of the examination and the extent to which the opinion is supported by explanation and relevant evidence. 20 C.F.R. § 404.1527(c). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ gave sufficient reasons for his rejection of Dr. Jacobs' opinions and, since these reasons are supported by the record, the ALJ's conclusions must be affirmed. First, Dr. Jacobs' conclusory opinions are not well supported. He primarily relies upon what he describes as "poor" testing but nowhere explains the testing results in any detail or why the results are indicative of such severe impairment. (Tr. 632-638). Also, even though he had only seen Plaintiff three times in 2012, Dr. Jacobs opines that this level of severity of impairment is "lifelong" for Plaintiff. (Tr. 636). However, Dr. Jacobs does not explain the basis for this opinion and the record reflects that Plaintiff had several years of employment as a young adult prior to his periods of incarceration. (Tr. 217). Finally, the ALJ accurately observed that the degree of impairment assessed by Dr. Jacobs is inconsistent with the record as a whole. For instance, upon discharge from services on April 28, 2011, treating therapist Chester assessed a GAF of 60, or moderate symptoms, and noted an improved condition. (Tr. 605-606).

Although Plaintiff disagrees with the ALJ's ultimate conclusions, he has not shown any error in the ALJ's evaluation of the medical evidence. See Rivera-Torres, 837 F.2d at 5 (the resolution

of evidentiary conflicts is within the province of the ALJ); see also Castro, 198 F. Supp. 2d at 54 ("[An ALJ] may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). Furthermore, treating source opinions based primarily on subjective complaints may be discounted by an ALJ under these circumstances. See Reeves v. Barnhart, 263 F. Supp. 2d 154, 161 (D. Mass. 2003). Plaintiff has shown no error by the ALJ in evaluating the evidence and assessing an RFC.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 9) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 30, 2015